### WILKINS *v.* DETROIT UNITED RAILWAY.

1. EVIDENCE—EXPERT AND OPINION TESTIMONY—PHYSICIANS AND SURGEONS—NEW TRIAL.

In reviewing a verdict of $8,000 in favor of a practicing attorney who was injured by defendant street railway company, and claimed to have sustained permanent injuries, *held*, that the evidence of plaintiff's medical witnesses, although not in complete harmony, was for the jury and supported the verdict.

2. DAMAGES—PERSONAL INJURIES—STREET RAILWAYS.

Verdict of $8,000 for permanent injuries to spine and muscles of shoulder, including hardening of muscles and neuritis, affecting earning capacity of practicing attorney who earned upwards of $6,000 a year, *held*, not excessive.

3. EVIDENCE—TRIAL—CROSS-EXAMINATION.

Nor was it error to refuse to permit defendant to cross-examine plaintiff as to the details of certain litigation in which he had been employed since his injuries.

4. SAME.

The court rightly ruled out an interrogatory of defendant's

counsel whether plaintiff wanted it to go out to the people of the county that his earning capacity had decreased by reason of the accident.

5. SAME—PLEADING—DECLARATION—SPECIAL DAMAGES—EFFECT OF INJURY.
   Where plaintiff's declaration alleged atrophy of the muscles of plaintiff's shoulder, it was competent to show that the effect thereof had been to cause curvature of his spine, though no allegations in the declaration presented such claim.

6. SAME—LEADING QUESTIONS—TRIAL.
   It is within the discretion of the trial court to permit leading questions.

7. NEW TRIAL — PHYSICIANS AND SURGEONS — PRIVILEGED COMMUNICATIONS.
   Where affidavits presented by both parties on motion for a new trial raised questions of fact, and defendant's affidavits included one by plaintiff's physician, who stated matters which could not be received in evidence, because privileged, the court did not err in holding that the motion for a new trial should be denied.

Error to Wayne; Rohnert, J. Submitted January 10, 1912. (Docket No. 43.) Decided March 29, 1912.

Case by Charles T. Wilkins against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Joslyn* (*A. B. Hall*, of counsel), for appellant.

*Dohany & Dohany,* for appellee.

OSTRANDER, J. Plaintiff alleged, and his testimony tended to prove, that he was injured by the negligence of defendant's servants while he was alighting from a car. Some assignments of error relied upon are based upon exceptions to rulings admitting and rejecting testimony, but the argument of appellant is addressed principally to the point that a new trial, which the court below refused, should have been granted because the verdict was exces-

sive and was against the weight of the evidence. What is claimed to be newly discovered evidence was presented upon the motion for a new trial and was and is urged as ground for a new trial. We have examined the record, and, as requested to do, have compared the testimony given by the medical men called in behalf of plaintiff and those called in behalf of defendant. It is said in argument that much of the medical testimony produced for plaintiff is loose, contradictory, indefinite, problematical, and unsatisfactory, while that offered for defendant is clear, scientific, and accurate. Plaintiff's version of the time and manner of his injury is not directly disputed. The extent of the injuries received and the immediate and continuing effect of them, and whether and, if at all, how much, the earning capacity of the plaintiff has been diminished thereby, are the principal matters in dispute. There are apparent discrepancies in the testimony for plaintiff, especially when that of the plaintiff himself and that of some of his medical witnesses is compared. There is perhaps a lack of entire agreement on the part of his medical witnesses as to the exact nature and extent of his injuries. The motion for a new trial was not decided by the trial judge but by his successor in office. Therefore we have not before us the opinion of the judge who had superior opportunity to determine the credibility of witnesses.

But we find no want of testimony supporting the theory of the plaintiff, and are not inclined to interpose the judgment of this court for that of the jury, whose particular duty it was to weigh and value the testimony of the medical, as well as that of other, witnesses. There is no such demonstrable, scientific infirmity in the views expressed by the physicians that this court may assume a knowledge with respect thereto superior to that possessed by the jury. The jury was warranted in finding that plaintiff was injured in the manner and with some of the consequences alleged in the declaration, and that he was entitled to recover substantial damages.

Nor do we think we should interfere upon the ground

that an excessive award for damages was made. A verdict of $8,000 was returned. Plaintiff is a practicing lawyer in the city of Detroit. When the cause was tried, he was a candidate for the office of circuit judge of Wayne county. The annual salary of that office is $7,000. He professed himself to be of opinion that if elected to the office he was physically and mentally able and competent to discharge the official duties. The alleged injury was received in February, 1909. The cause was tried in February, 1911. Plaintiff testified that in the year 1910 he earned more than $6,000, and that for certain work done in June, July, and August of the year 1909 he received $1,500, earned by 63 days of work of 7 hours a day

It may be noticed here that error is assigned, based upon the alleged refusal of the court to permit proper cross-examination of plaintiff upon the subject of his earning capacity and the amount of work he did after receiving his injury. The ruling excepted to was 'one refusing counsel the right to go further into the details of certain litigation conducted by plaintiff. Plaintiff had testified concerning a certain cause that it took considerable time in court, involved about $18,000 upon the papers, involved about $700 in the end. We cannot say that cross-examination was unduly restricted. Plaintiff testified:

"I can perform my duties as a lawyer now. I do perform duties as a lawyer at a greater strain, that is all."

But there is also testimony of pain endured, and probably to be endured, and of permanent physical injury affecting the nervous system; of neuritis, and of a gradual hardening of muscles. Upon the testimony submitted to the jury, the award of damages was not clearly excessive.

As has been stated, appellant contends that the testimony which was submitted to the jury is not the testimony which should have been submitted to them, and we notice the further assignments of error, based upon exceptions to rulings admitting or rejecting testimony.

Plaintiff was asked upon cross-examination the following question, which was objected to and the answer excluded:

"Do you want it to go out to the people of this county that your earning càpacity is lessened by reason of the accident?"

It is well enough, perhaps, to show what occurred previous to the asking of this question, and for this purpose we insert the testimony immediately preceding it:

"*Q.* You are asking this jury for some damages. Will you eliminate from consideration any question of your lessened earning capacity?

"*A.* No, sir; because I consider that a practicing attorney, as a practicing attorney in the active practice work, that I am not as capable as before, that my earning capacity is permanently decreased.

"*Q.* But not as a judge?

"*A.* I do not think I can get around as well as I could get at all hours of the day and night and attend to the work of a practicing attorney, the work that a practicing attorney has to attend to. As an attorney I would have to jump away any hour of the night to see some client or some witness; particularly in personal injury cases. I would not feel that I could do it. I used to be able to do it but it would be a drain upon my reserved force now. But I think I can work as a judge. I think that I could do better work than ever before because I am older and have heard more.

"*Q.* Then you want the people of this county—

"*Mr. Dohany:* I object to it because the people of this county have nothing to do with this case.

"*Q.* You are a candidate for judge?

"*A.* I am a candidate for nomination.

"*Q.* You have gone through one primary and have been through the law association and have been a candidate before your fellow members of the bar and they have recommended you to the people of this county?

"*A.* Yes, sir."

The witness had given his testimony publicly. Whether he wanted it to go out to the people that his earning capacity had been lessened was not material to any issue which

the jury was called upon to determine. On redirect examination he stated that he considered the work of an attorney as distinct and different in character from the work of a judge in that it required more physical effort and was of an entirely different kind. He was then asked:

"State whether or not your physical condition now is one of the things that has held up your final determination to be a candidate for the office of circuit judge. (This was objected to as leading.)

"*The Court:* He may answer it. Note an exception.

"*A.* Yes; that is advanced to me as an argument by different lawyers.

"*The Court:* I will exclude the last part of that answer.

"*Mr. Hall:* I move that it all be stricken out.

"*The Court:* It may be stricken out. Note an exception."

It is probable that counsel overlooked the fact that the testimony was stricken out on his motion.

The following question was asked of one of plaintiff's medical witnesses:

"What, if anything, has been the effect upon the spinal column from the shrinking of the muscle?"

The objection was that:

"There is nothing in the declaration about any spinal column.

"*Mr. Dohany:* We have a right to prove the condition resulting from the atrophy of muscle of the shoulder.

"*The Court:* I think any condition which exists, which follows from the injuries complained of, that is not the direct injury but consequent upon a direct injury, may be shown. In other words, what effect upon the other conditions may be shown which are due to conditions caused by the accident?"

The ruling was excepted to, and the witness answered:

"There is a curvature to the right, which in my opinion is due to the muscular condition of the left side."

It is quite possible that the record as printed does not

correctly state the reason for the ruling which was given by the court.  We do not understand that plaintiff was seeking to recover damages for an item of injury which might be termed curvature of the spine, but that counsel was seeking to show that one of the results of a condition described in the declaration and caused by the original injury was a curvature of the spine.  It is alleged in the declaration that, as a result of the injury to his shoulder, his left shoulder joint became dislocated and the ligaments, muscles, and tendons of his left shoulder were cut, torn, stretched, lacerated, and permanently injured. It is claimed that one of the effects from the injury to the muscles alleged in the declaration was the curvature of the spine and that the testimony was proper as showing the nature and extent of the injury to the muscles.  In this view of the testimony, there was no error in receiving it.

A witness sworn for plaintiff exhibited certain plates, known as X-ray pictures, of portions of plaintiff's body. On cross-examination he was asked whether or not the pictures demonstrated anything abnormal, and he answered, "I would not be positive about that."  On redirect examination he said that he noted in the pictures the deposit of a foreign substance in the muscle and that it was quite marked; that it indicated a deposit of lime in the muscle which would result in hardening or ossification of the muscle.  On recross-examination he was asked whether the condition he referred to was abnormal, and he said, "Yes."

"*Q.* Then why did you tell me in answer to my question that you found nothing abnormal in these plates?

"*A.* I should like to have the court stenographer refer back to my testimony so that I would be precise in what I said."

It appears in the record that the stenographer read his testimony, but it does not appear that he was asked any further questions.  Now, the only objection to his testimony at any time appears to have been the one that a cer-

tain question asked on redirect examination was leading. The question was:

" Now, doctor, do you note in these pictures the deposit of any foreign substance in the muscles ? "

We have so many times discussed the subject of the discretion of the trial court to permit leading questions, that a reference to the decided cases is uncalled for. It is often proper, and frequently necessary, to ask leading questions to develop the facts, and it was entirely competent in this case, after the doctor had answered that he was not positive that the plates disclosed anything abnormal, to ask him directly whether, as he read the plates, or the pictures, there was indicated the deposit of any foreign substance in the muscles.

The grounds for the motion for a new trial were those which have already been discussed, and, further, that if the affidavit of Dr. Polglase, filed with the motion, was true, plaintiff had been guilty of wilful perjury and the verdict should not be permitted to stand, and that the defendant is deprived of the testimony of Dr. Polglase, who treated the plaintiff, prior to his alleged accident, for alcoholism, and that, the plaintiff having denied such treatment, the defendant was prevented from framing a necessary hypothetical question to the medical witness and from properly cross-examining the medical witnesses produced on behalf of the plaintiff. One of the affidavits attached to the motion, upon which the motion is based, is made by one of the attorneys for defendant, who states that he cross-examined the plaintiff with a view of establishing from the testimony of the plaintiff that he had been treated for alcoholism prior to 1909, and especially by Dr. Polglase. The testimony of the plaintiff in that behalf is set out at large, and the affidavit concludes with the statements that, before and at the time plaintiff gave his testimony, the deponent made a diligent search for Dr. Polglase, was informed that he was somewhere on the Pacific Coast, and could not discover his exact address; that after

the trial he learned that Dr. Polglase was a resident of the city of New York, and went immediately to the city of New York, and secured an affidavit from the doctor, which affidavit is attached to the motion. Deponent further sets out that he was informed by physicians that neuritis is very often the result of excessive alcoholism, and that he was prevented from examining the plaintiff's medical witnesses and of putting hypothetical questions to them, based upon the history of excessive alcoholism. The affidavit of Dr. Polglase is to the effect that in December, 1894, he was requested to prescribe for plaintiff, who had been brought from the Detroit Sanitarium, where deponent was informed he had been sent for alcoholism; that he found plaintiff in a condition bordering on delirium tremens, and prescribed for him, and, after he recovered from his acute condition, at the request of plaintiff, he treated him for the cure of the liquor habit and for the alleviation of the effects of acute alcoholism; that during this treatment injections were administered by the deponent several times a week, and that plaintiff came to the office of deponent for the purpose of receiving such injections; that at the conclusion of this treatment the plaintiff declared himself cured, and, so far as deponent knows, presumably he continued cured of the liquor habit. He further states that in the year 1907 plaintiff retained him as an expert in a lawsuit involving the effects of epilepsy upon the legal capacity to bequeath property. A third affidavit, made by a physician who assisted the defense in an advisory capacity during the trial, is attached to the motion, and is to the effect that, on the evening on which the verdict for plaintiff was rendered, deponent met Dr. Polozker, a witness for the plaintiff at the trial, and had a conversation with him, during which Polozker told deponent that in his opinion plaintiff was suffering from neuritis as a result of alcoholism; that he asked the said Polozker why he had not so stated on his examination, and received the reply that he had not been paid for that purpose.

The affidavit of Dr. Polozker, presented in opposition, is to the effect that he did meet Dr. Sanderson on the street and had a conversation with him. He denies that he told him that in his opinion the plaintiff was suffering from neuritis as a result of alcoholism. He denies that he made the statements recited in the affidavit of said Sanderson, and says that Sanderson said to deponent that he thought the neuritis from which plaintiff was suffering was due to alcoholism. It appears that during the cross-examination of plaintiff he was asked whether he remembered Dr. Polglase, and he said that he did; denied that he treated him for nervousness before 1909, and said he had no recollection of Dr. Polglase ever treating him for anything or of his ever going to Dr. Polglase for treatment. He was asked if Dr. Polglase ever treated him for alcoholism, and answered "Never." This examination having been continued by a few questions and answers, the witness answered, "I had an idea you said Dr. Polozker." He was then asked, "Do you know Dr. Polglase?" and answered, "Yes," and he denied that Dr. Polglase ever treated him for alcoholism. He was asked, "Will you say that Dr. Polglase ever treated you for nervousness?" and answered that he did not. He was then asked, "What did he treat you for?" and the result of his answer to this and other questions appears to be that Dr. Polglase gave him some prescription, but he could not remember what the trouble was, but rather thought it was some stomach trouble; he could not recollect that he had been to the doctor's office; said that the prescription which he gave him was given some time within the last 12 or 15 years; could not remember the character or form of the medicine, thought that his treatment took place while plaintiff was holding his first term as assistant United States attorney; denied that the doctor ever used any hypodermic treatment for him.

The court was not in error in ruling that the affidavits presented no ground for granting a new trial, and we need state but one reason for our holding, which is that if

Dr. Polglase had been present in court as a witness for the defendant he could not have been permitted to testify to the facts set up in his affidavit.   That he had treated plaintiff might perhaps have been shown, and this plaintiff admitted.

Careful consideration of appellant's contentions and argument has not led us to the conclusion that reversible error is made out.

The judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.   BIRD, J., did not sit.